UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20-62263-CIV-SINGHAL/Valle

KEBIN VALENTIN a/k/a KEVIN VALENTIN,
MATTHEW DAVID VALENTIN, and
ANABELY ACEVEDO,

    Plaintiffs,

v.

RMRP REALTY, LLC,
1245, LLC, T.J.F. REALTY CORP.,
RONALD T. FATATO, RONALD J. FATATO,
and INTER STATE SALES CORP.
d/b/a INTERSTATE SALES CORP.,

    Defendants.
_____/

## **ORDER**

**THIS CAUSE** is before the Court on Defendants' Motion for Summary Judgment and Incorporated Statement of Material Undisputed Facts and Memorandum of Law (DE [44]), filed on October 22, 2021. Defendants' Statement of Material Undisputed Facts for Summary Judgment Purposes ("Statement of Material Facts") (DE [45]) was filed in conjunction with the instant motion. Plaintiffs filed their response in opposition to the instant motion (DE [55]) and their Amended Response to Defendants' Statement of Material Facts ("Plaintiffs' Amended Statement of Facts") (DE [66]). Defendants subsequently filed their Reply to Plaintiffs' Response to Motion for Summary Judgment (DE [74]) and their Response to Plaintiffs' Additional Facts Contained in Plaintiffs' Amended Response to Statement of Material Facts ("Reply Statement of Material Facts") (DE [73]). Accordingly, the matter is fully briefed and ripe for review.

**I.     BACKGROUND**

Plaintiffs Kebin Valentin, his wife, Anabely Acevedo, and their son, Matthew David Valentin ("Matthew Valentin") (collectively, "Plaintiffs") filed a one-count Complaint (DE [1]) against Defendants RMRP Realty, LLC, 1245, LLC, T.J.F. Realty Corp., Inter State Sales Corp., Ronald T. Fatato, and Ronald J. Fatato (collectively "Defendants") alleging violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201 *et seq.* on November 5, 2020. Plaintiffs allege they worked as laborers for Defendants until October 2020. *See* (Def. Stat. (DE [45]) at ¶ 2); (Pl. Stat. (DE [66]) at ¶ 2) ("Undisputed."). According to the allegations included in Plaintiffs' Statements of Claim (DE [26]), the relevant time-period for this matter is November 6, 2017, through October 10, 2020. Plaintiffs claim they are entitled to unpaid minimum wages, time-and-one-half overtime pay, and liquidated damages pursuant to the FLSA.

RMRP Realty, LLC, a Florida limited liability company, owns eight apartments located in two adjacent building in Coral Springs, Florida. *See* (Def. Stat. (DE [45]) at ¶¶ 3, 4); (Pl. Stat. (DE [66]) at ¶ 3) ("Undisputed."); *see also* (Pl. Stat. (DE [66]) at ¶ 4) (claiming Defendants required Plaintiffs to work at other properties purportedly owned by Defendants). "RMRP Realty, LLC rented the eight apartments for an average total of approximately $14,000 per month in 2017, $13,000 per month in 2018, $13,500.00 per month in 2019, and $12,500 per month in 2020." *See* (Def. Stat. (DE [45]) at ¶ 5); (Pl. Stat. (DE [66]) at ¶ 5) ("Undisputed."). "The rent totals depended on the level of occupancy, amounts subsidized by the Broward County Housing Authority, and changes in market rates." (Def. Stat. (DE [45]) at ¶ 5); (Pl. Stat. (DE [66]) at ¶ 5) ("Undisputed.").

T.J.F. Realty Corp., a New Jersey corporation, owns a warehouse row in Oakland Park, Florida, which consists of seven warehouses. *See* (Def. Stat. (DE [45]) at ¶¶ 12–13); (Pl. Stat. (DE [66]) at ¶ 12–13) ("Undisputed."). T.J.F. Realty Corp. also owns one single unit family townhouse in Fort Lauderdale, Florida and "received the following combined average monthly rent totals for its seven storage/warehouse units and the one residential unit: $12,000 in 2017, $10,750 in 2018, $11,750 in 2019, and $11,500 in 2020. These amounts varied due to varying levels of occupancy." (Def. Stat. (DE [45]) at ¶¶ 14–15); (Pl. Stat. (DE [66]) at ¶ 14) ("Undisputed."); *see also* (Pl. Stat. (DE [66]) at ¶ 15) (claiming Defendants required Plaintiffs to work at other properties purportedly owned by Defendants) (citing (Pl. Stat. (DE [66]) at ¶ 8)). T.J.F. Realty Corp. has no customers outside Florida and all "its customers were tenants in the seven storage/warehouse units and the residential unit." (Def. Stat. (DE [45]) at ¶ 16); (Pl. Stat. (DE [66]) at ¶ 16) ("Undisputed.").

Interstate Sales Corp., a New Jersey corporation, does not own any property in Florida. (Def. Stat. (DE [45]) at ¶ 22); (Pl. Stat. (DE [66]) at ¶ 22) ("Undisputed."). It owns two warehouses in New Jersey, one of which has been unoccupied since 2015/2016. (Def. Stat. (DE [45]) at ¶ 23); (Pl. Stat. (DE [66]) at ¶ 23) (claiming Defendants required Plaintiffs to work at other properties purportedly owned by Defendants) (citing (Pl. Stat. (DE [66]) at ¶ 8)). Defendants claim none of the Plaintiffs ever provided any services or work for Interstate Sales Corp. as it has no properties in Florida. (Def. Stat. (DE [45]) at ¶ 28); (Pl. Stat. (DE [66]) at ¶ 28) (claiming Plaintiffs worked as laborers and Defendants required Plaintiffs to work at other properties purportedly owned by Defendants).

1245, LLC, a Florida limited liability company, owned one property in Florida during the relevant period, a condominium unit and personal investment of Defendant Ronald T. Fatato in West Palm Beach, Florida, which was sold on May 15, 2018.  (Def. Stat. (DE [45]) at ¶¶ 29–32); (Pl. Stat. (DE [66]) at ¶¶ 29, 32, 33) ("Undisputed."); *see also* (Pl. Stat. (DE [66]) at ¶ 30) (Plaintiff alleges the property was transferred to 1245, LLC in April of 2020 without citation).  Prior to its sale, the property owned by 1245, LLC was rented out until it was sold on May 15, 2018.  (Def. Stat. (DE [45]) at ¶ 33); (Pl. Stat. (DE [66]) at ¶ 33) ("Undisputed.").

Defendant Ronald T. Fatato resided and worked in South Florida, managing the affairs of RMRP Realty, LLC and T.J.F. Realty Corp. in 2017, 2018, 2019, and 2020. (Def. Stat. (DE [45]) at ¶ 47).  Plaintiffs claim they regularly contacted Defendants at their New York office, sent receipt and e-mails to the New York office employees, and communicated with the New York office to coordinate requests.  (Pl. Stat. (DE [66]) at ¶ 47) (citing to the Declaration of Kebin Valentin aka Kevin Valentin (DE [66-1])). Defendants insist Plaintiff Kebin Valentin solely communicated and reported to Defendant Ronald T. Fatato (Def. Stat. (DE [45]) at ¶ 47); *see also* (Def. Stat. (DE [73]) at ¶ 54).

Plaintiffs resided in one of the eight apartments RMRP Realty, LLC owned in Coral Springs, Florida.  (Def. Stat. (DE [45]) at ¶ 38); (Pl. Stat. (DE [66]) at ¶ 38) ("Undisputed."). Plaintiff Kebin Valentin was hired by RMRP Realty, LLC after he asked if he could earn additional money to help his family's financial situation.  (Def. Stat. (DE [45]) at ¶ 39); (Pl. Stat. (DE [66]) at 39) (disputing the reason Defendants hired Plaintiff Kebin Valentin and claiming Defendants asked Plaintiffs to clean units).  Plaintiff Kebin Valentin "was hired to provide light maintenance services in the eight apartments [RMRP Realty, LLC] owned

4

in Coral Springs[, Florida]. His regular and recurrent tasks consisted of light repairs and cleaning, patching holes, occasional painting, walking the small grounds and picking up litter, maintaining the lawn every other week and making sure the property was in good order. On occasion, he was tasked with preparation of apartments for new tenants; however, this was done seldomly because it happened only at expiration of leases on one of the seven apartments in which he and his family did not reside." (Def. Stat. (DE [45]) at ¶ 40); (Pl. Stat. (DE [66]) at 40) (claiming Plaintiff Kebin Valentin's work was not confined to the apartment building where his family was confined).

In 2017, Plaintiff Kebin Valentin was also hired by T.J.F. Realty Corp. to provide light maintenance at the seven warehouse units it owned until 2019. (Def. Stat. (DE [45]) at ¶¶ 42; 45); (Pl. Stat. (DE [66]) at ¶ 42, 45) ("Disputed. *See supra* ¶ 42.") (citing the Declaration of Kebin Valentin aka Kevin Valentin (DE [66-1]) to support the claims that Plaintiff Kebin Valentin was assigned to do regular maintenance, had keys to all the warehouses, met with prospective tenants to perform walkthroughs of the warehouses, and performed as a liaison for Defendants). The tasks for T.J.F. Realty Corp. included walking the small grounds of the common area along the rear and one side of the building, picking up litter, pulling weeds, and reporting to Ronald T. Fatato if there were any issues. (Def. Stat. (DE [45]) at ¶ 43); (Pl. Stat. (DE [66]) at ¶ 43) ("Disputed. *See supra* ¶ 42."). Plaintiff Kebin Valentin's regular and recurrent tasks for RMRP Realty, LLC and T.J.F. Realty Corp. did not include collection of rent from the tenants or being the liaison between the company and the tenants. (Def. Stat. (DE [45]) at ¶¶ 41; 44); (Pl. Stat. (DE [66]) at ¶¶ 41, 42) ("Disputed. *See supra* ¶ 42.").

5

Plaintiff Kebin Valentin's regular and recurrent work-related communications with RMRP Realty, LLC and T.J.F. Corp. were with Ronald T. Fatato and were conducted in person or by telephone.  (Def. Stat. (DE [45]) at ¶ 46); (Pl. Stat. (DE [66]) at ¶ 46) (claiming Plaintiff Kebin Valentin actually communicated regularly with Ronald T. Fatato, Ronald J. Fatato, and Defendants' New York employees).  Plaintiff Anabely Acevedo testified at her deposition that she did not have any direct communications with Defendants because she did not speak English and that her communications with Defendants were only indirect communications, through her husband, Plaintiff Kebin Valentin.  (Def. Stat. (DE [45]) at ¶ 49); (Pl. Stat. (DE [66]) at ¶ 49) ("Undisputed.").  Plaintiff Matthew Valentin testified at his deposition that he did not have any direct communications with Defendants and that his communications with Defendants were only indirect communications, through his father, Plaintiff Kebin Valentin.  (Def. Stat. (DE [45]) at ¶ 51); (Pl. Stat. (DE [66]) at ¶ 51); *see also* (Pl. Stat. (DE [66]) at ¶ 52) (disputing Defendants' statement by alleging Plaintiff Matthew Valentin spoke with Plaintiff Kebin Valentin regarding Ronald T. Fatato's prospective projects, which led Plaintiffs to believe Defendants' business were profitable).

In Plaintiffs' Amended Statement of Facts (DE [66]), Plaintiffs claim all checks Defendants mailed to Plaintiffs came from New York.  (Pl. Stat. (DE [66]) at ¶ 53); *see also* (Pl. Stat. (DE [66]) Ex. P at 132); *but see* (Def. Stat. (DE [73]) at ¶ 53) (disputing the insinuation and pointing to the documents attached by Plaintiffs to Kebin Valentin's Declaration (DE [66-1]) which "demonstrate that, while the return sticker on the envelope included RMRP Realty, LLC's address in Brooklyn, NY, it was actually mailed from Miami, [Florida] as indicated by the post office stamp on the envelope.") (citing (Pl. Stat. (DE [66]) Ex. S at 151)).  Plaintiffs claim Defendants Ronald T. Fatato and Ronald J. Fatato

6

controlled all aspects of Plaintiffs' tasks, duties, and responsibilities. (Pl. Stat. (DE [66]) at ¶ 54); *but see* (Def. Stat. (DE [73]) at ¶ 54) (denying that Ronald J. Fatato instructed the Plaintiffs in any manner and arguing Plaintiffs' evidence does not support this claim); *but see* (Pl. Stat. (DE [66]) Ex. D. at 25, Ex. K at 102) (indicating communication between Plaintiff Kebin Valentin and someone other than Defendant Ronald T. Fatato on February 12, 2019, and October 18, 2019). Plaintiffs claim the instructions were always directed to all Plaintiffs, not just Plaintiff Kebin Valentin. (Pl. Stat. (DE [66]) at ¶ 55); *but see* (Def. Stat. (DE [73]) at ¶ 55) (denying that any instructions were given to Plaintiffs Anabely Acevedo and Matthew Valentin and arguing Plaintiffs' evidence does not support this claim).

Plaintiffs claim Defendants offered to pay Plaintiff Kebin Valentin $1,000 a month, not penalize any late rental payments, and promised a work vehicle. (Pl. Stat. (DE [66]) at ¶ 56). In his declaration, Plaintiff Kebin Valentin alleges Defendant Ronald T. Fatato told him Defendants Ronald T. Fatato and Ronald J. Fatato jointly owned all subject properties. (Pl. Stat. (DE [66]) at ¶ 57). Plaintiffs Kebin Valentin and Matthew Valentin attest Defendant Ronald T. Fatato hired all Plaintiffs to work for Defendants, turned over the lawn service work to Plaintiff Matthew Valentin for $500 per month, and stated Plaintiff Anabely Acevedo would receive a $500 monthly rent credit. (Pl. Stat. (DE [66]) at ¶¶ 58–60). Plaintiffs claim Plaintiff Matthew Valentin always assisted Plaintiff Kebin Valentin in the performance of his tasks for Defendants, however, Defendants claim they are without knowledge of what Plaintiff Kebin Valentin asked his son to do on his behalf. (Pl. Stat. (DE [66]) at ¶ 71); *see also* (Def. Stat. (DE [73]) at ¶ 71).

Defendants' now move for summary judgment on all of Plaintiffs' claims. This Court would note the parties failed to docket their exhibits in accordance with Court CM/ECF procedures.[1] Local Rule 3L.(2) provides:

> **(2) Describing an Attachment to a Docket Entry**
>
> A party filing an attachment to a document shall select one of the prescribed attachment categories from the drop-down menu (e.g., affidavit, transcript), provide an alphabetical or numerical designation (e.g., Exhibit A, Exhibit 1), **and descriptively name each attachment (e.g., Exhibit 1 - Affidavit of Boo Radley)** in a manner that enables the Court to easily locate and distinguish attachments.

L.R. 3L.(2) (emphasis added). Additionally, the parties' reference to these declarations, exhibits, and attachments in their statements do not pincite exactly where in the record this Court should refer. The Court will not expend valuable judicial resources searching for resolution of such purported factual disputes.[2] *See* S.D. Fla. L.R. 56.1(a)(2) ("An opponent's Statement of Material Facts shall clearly challenge any purportedly material fact asserted by the movant that the opponent contends is **genuinely in dispute**.") (emphasis added).

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment "is appropriate only if 'the movant shows that there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a));[3] *see also Alabama v.*

---

[1] Defendants' Statement of Material Facts (DE [45]) includes 832 pages of declarations, exhibits, and attachments in support of summary judgment. Plaintiffs' Amended Statement of Facts (DE [66]) includes 184 pages of declarations, exhibits, and attachments in opposition to summary judgment.
[2] "Judges are not like pigs, hunting for truffles buried in briefs." *Reese v. Herbert*, 527 F. 3d 1253, 1268 (11th Cir. 2008) (cleaned up).
[3] The 2010 Amendment to Rule 56(a) substituted the phrase "genuine dispute" for the former "'genuine issue' of any material fact."

8

*North Carolina*, 560 U.S. 330, 344 (2010). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). An issue is "genuine" if a reasonable trier of fact, viewing all the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). And a fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). "[W]here the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." *DA Realty Holdings, LLC v. Tenn. Land Consultants*, 631 Fed. Appx. 817, 820 (11th Cir. 2015).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). "[T]his, however, does not mean that we are constrained to accept all the nonmovant's factual characterizations and legal arguments." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994).

### III. <u>DISCUSSION</u>

As an initial matter, Defendants argue Plaintiffs have failed to establish and cannot establish that subject matter jurisdiction under the FLSA exists. Defendants argue they are entitled to judgment in their favor and against all Plaintiffs as a matter of law on Plaintiffs' alleged FLSA unpaid overtime and minimum wage claims because Plaintiffs cannot meet their burden to show that they were covered under either the "enterprise coverage" or "individual coverage" theories of the FLSA. Plaintiffs argue they are all individually covered under the FLSA. Specifically, Plaintiffs argue Plaintiff Kebin Valentin is individually covered because he communicated with Defendants' employees located in New York three to four times per week. Additionally, Plaintiffs Anabely Acevedo and Matthew Valentin claim they are individually covered because they communicated with Defendants' employees in New York through Plaintiff Kebin Valentin, who acted as an intermediary.

"The FLSA mandates that an "employee[]" who is "engaged in interstate commerce" must be paid an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week. 29 U.S.C. § 207(a)." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011) (citing 29 U.S.C. § 207(a)(1)). "If a covered employee is not paid the statutory wage, the FLSA creates for that employee a private cause of action against his employer for the recovery of unpaid overtime wages and back pay." *Id.* at 1298–99 (citing 29 U.S.C. § 216(b)). "As defined by the statute, and subject to certain exceptions not at issue here, an employee is 'any individual employed by an employer.'" *Id.* at 1299 (quoting 29 U.S.C. § 203(e)(1)). "The statutory definition of "employer" is similarly broad; it encompasses both the

employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" *Id.* (quoting 29 U.S.C. § 203(d)). "[A] covered employee may file suit directly against an employer that fails to pay him the statutory wage, or may make a derivative claim against any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Id.* (citing *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986) (explaining that a person is derivatively liable if he is intimately involved in the day-to-day operations of an employer that would be directly liable under the FLSA)).

"In order to be eligible for FLSA overtime, however, an employee must first demonstrate that he is "covered" by the FLSA." *Josendis*, 662 F.3d at 1299. There are two possible types of FLSA coverage. *See e.g.*, *Ares v. Manuel Diaz Farms, Inc.*, 318 F.3d 1054, 1056 (11th Cir. 2003) (citing 29 U.S.C. § 207(a)(1)). First, an employee may claim "individual coverage" if he regularly and "directly participat[es] in the actual movement of persons or things in interstate commerce." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006) (citing 29 C.F.R. § 776.23(d)(2)); *see also* 29 U.S.C. § 207(a)(1) (mandating time-and-one-half for "employees . . . engaged in [interstate] commerce or in the production of goods for [interstate] commerce").[4] Second, an employee is subject to enterprise coverage if he is "employed in an **enterprise** engaged in **commerce** or in the production of goods for commerce." 29 U.S.C. § 207(a)(1) (emphasis added). Commerce means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). An "enterprise" is the activities performed by

---

[4] Plaintiffs' opposition to summary judgment rests in the argument that Plaintiffs were employees eligible to claim individual coverage under FLSA. This Court, however, will address both types of FLSA coverage.

11

a person or persons who are (1) engaged in "related activities," (2) under "unified operation or common control," and (3) have a "common business purpose." 29 U.S.C. § 203(r)(1).

### A. <u>Individual Coverage</u>

For Plaintiffs to survive summary judgment, they needed to produce admissible evidence that they (1) worked directly for an instrumentality of interstate commerce, or (2) regularly used the instrumentalities of interstate commerce. *See Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007). Plaintiff Kebin Valentin was hired by RMRP Realty, LLC and, later, by T.J.F. Reatly, Corp. to provide maintenance-type services. According to Plaintiffs' Complaint (DE [1]), Plaintiff Kebin Valentin's son, Matthew Valentin, and wife, Anabely Acevedo, also worked with him. Plaintiff Kebin Valentin was not working directly for an instrumentality of interstate commerce. Plaintiff Kebin Valentin would therefore have had to come forward with evidence, beyond mere speculation, that, as a part of his work duties, he repeatedly traveled to and from Defendants' job sites outside of Florida or used an item moving in interstate commerce. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiffs did not.

Plaintiff Kebin Valentin never traveled outside of Florida for purposes of his employment. In the Declaration of Ronald T. Fatato (DE [45-1]), Defendant Ronald T. Fatato declared that, while Plaintiff Kebin Valentin regularly communicated with Defendant Ronald T. Fatato over the phone, Defendant Ronald T. Fatato resided in South Florida. Plaintiff Kebin Valentin presented no evidence to dispute Defendant Ronald T. Fatato's declaration except to claim the calls were made to Defendant Ronald T. Fatato's New York mobile cellphone and his checks were mailed from New York. However, as

Plaintiff Kebin Valentin did not "travel" across state lines as part of his work for Defendants, he cannot claim individual coverage. Furthermore, Plaintiffs' argument that Plaintiffs Matthew Valentin and Anabely Acevedo were covered individually under the FLSA because they relayed information to Plaintiff Kebin Valentin, who then relayed it to Defendants outside of Florida is unsupported by the record. Second, Plaintiff Kebin Valentin did not make a showing that he directly engaged in interstate commerce as a part of his responsibilities and, thus, cannot survive summary judgment on this record. In sum, Plaintiffs produced nothing to create a material issue of genuine fact as to his "direct[] participat[ion]" in interstate commerce under an individual coverage theory. *Thorne*, 448 F.3d at 1266.

### B. Enterprise Coverage

For enterprise coverage, there must be an "[e]nterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 203(s)(1). An enterprise qualifies if it "has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and has "annual gross volume of sales made or business done" of not less than $500,000. 29 U.S.C. § 203(s)(1)(A)(i), (ii). Defendants argue Plaintiffs are not covered under the FLSA enterprise coverage theory because none of the named entities grossed $500,000 or more during any of the relevant years. Plaintiffs do not directly respond to this argument. Instead, Plaintiffs argue Plaintiffs Matthew Valentin and Anabely Acevedo's indirect participation in interstate commerce as basis for FLSA coverage.

At the outset, Plaintiffs failed to provide any concrete evidence that Defendants had gross sales of at least $500,000 in any one year. This alone means Plaintiffs' argument must fail. In their opposition, Plaintiffs principally relied on conjecture and speculation, not admissible evidence based on personal knowledge. For example, Plaintiff Matthew Valentin believed Defendants' businesses were "earning substantial profits" based on purported conversations between Plaintiff Kebin Valentin and Defendant Ronald T. Fatato, which were later relayed to Plaintiff Matthew Valentin by his father, Plaintiff Kebin Valentin. *See* (Pl. Stat. (DE [66]) at ¶ 52) (alleging Plaintiff Matthew Valentin spoke with Plaintiff Kebin Valentin regarding Ronald T. Fatato's prospective projects, which led Plaintiff Matthew Valentin to believe Defendants' business was profitable). This evidence, on its own, does not establish Defendants satisfied the statutory threshold. The Declaration of Matthew David Valentin (DE [66-2]) then extrapolates a "belief" that Defendants' gross sales met or exceed $500,000 annually. Speculation and inferences based on speculation, however, are not sufficient to create a genuine issue of material fact at the summary judgment stage. *See Gadsby v. Am. Golf Corp. of Cal.*, 557 Fed. Appx. 837, 840 (11th Cir. 2014) (per curiam) ("We have said repeatedly that speculation about a fact or result is insufficient to survive summary judgment."). This showing is not enough to preclude summary judgment. *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002) (interpreting the Federal Rules of Civil Procedure's personal knowledge requirement to require more than affidavits based only on "information and belief").

### C. <u>Single Enterprise</u>

Plaintiffs' Complaint (DE [1]) alleges the four entities are "a single enterprise under the Fair Labor Standards Act, performed related activities through unified operation and common control for a common business purpose, engaged along with their employees in interstate commerce, and have an annual gross sales and/or business volume of $500,000 or more." (Compl. (DE [1]) at ¶ 8). In this case, however, neither RMRP Realty, LLC, 1245, LLC, T.J.F. Realty Corp., nor Inter State Sales Corp. individually made over $500,000 in any single year during the relevant period. Therefore, in order to have enterprise liability attach, RMRP Realty, LLC, 1245, LLC, T.J.F. Realty Corp., and Inter State Sales Corp. would need to constitute a single enterprise. Whether two companies constitute a single enterprise for FLSA coverage and whether they are liable as joint employers under 29 U.S.C. § 207 are technically separate issues. *See e.g.*, *Patel v. Wargo*, 803 F.2d 632, 637 (11th Cir.1986) ("[T]he enterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage.").

The Fair Labor Standards Act defines enterprise as "related activities performed (either through unified operation or common control) by any person or persons for a common business purpose." 29 U.S.C. § 203(r). "The statutory provision requires the existence of three elements: (1) related activities; (2) unified operation or common control; and (3) a common business purpose." *Donovan v. Easton Land & Dev., Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984). "All three elements must be present for an "enterprise" to exist." *Id.* (quoting *Dunlop v. Ashy*, 555 F.2d 1228, 1231 (5th Cir.1977)). Defendants argue Plaintiffs' allegations of single enterprise are bare and conclusory and, even if

15

accepted as true, would not suffice to satisfy the annual gross revenue requirement of 29 U.S.C. § 203(s)(1)(A)(ii). This Court agrees, and, as discussed above Plaintiffs failed to provide any concrete evidence that Defendants had gross cumulative sales of at least $500,000 in any one year.

To oppose summary judgment, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Plaintiffs have not. The Declaration of Ronald T. Fatato (DE [45-1]) supports Defendants' position that RMRP Realty, LLC, 1245, LLC, T.J.F. Realty Corp., and Inter State Sales Corp., never grossed $500,000 in sales in 2017, 2018, 2019, or 2020; not even when combined. Therefore, to create a genuine issue of material fact, Plaintiffs needed to provide concrete, admissible evidence that Defendants met both statutory requirements. Plaintiffs, however, did not make such showing.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Defendants' Motion for Summary Judgment and Incorporated Statement of Material Undisputed Facts and Memorandum of Law (DE [44]) is **GRANTED**. In accordance with Federal Rule of Civil Procedure 58, judgment will be entered separately.

The Clerk of Court is directed to **CLOSE** this case and **DENY AS MOOT** any pending motions. Furthermore, all deadlines are **TERMINATED**, and all hearings are **CANCELLED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 29th day of July 2022.

_____
RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF